Black, P.J.
This case is an appeal pursuant to a petition for judicial review brought by Shlomo Pinkas, as Trustee of S & S Realty Trust (hereafter referred to as “the plaintiff’), under G. L. c. 30A, § 14, and § 10(a) of Article XXXVIII of the By-Laws of the Town of Brookline. The petition seeks review of a denial by the defendant, Rent Control Board of Brookline (hereafter referred to as “the Board”), of his application for a Certificate of Eviction, which sought to evict his tenant Michelle Miller, and those holding under her, from apartment 1 located at 14 Foster Street, Brookline, Massachusetts. On April 7, 1987, the Board issued an order denying the plaintiffs application for a Certificate of Eviction. Thereafter, the plaintiff brought a petition for judicial review in the Brookline Division. The trial judge affirmed the Board’s decision on February 10,1988, on the grounds that the Board’s decision was supported by substantial evidence and not predicated upon any error of law.
The appellate record discloses that on December 4,1986, the plaintiff filed an application for a Certificate of Eviction with the Board, in which he alleged that the tenant had vacated the apartment in question, in violation of her lease and had abandoned the premises. Also that an unaccepted person had taken occupancy and had failed to pay the rent. A hearing was held before the Board on December 23,1986.
At the commencement of the hearing, the Hearing Examiner noted that one Ellen Waxman was presént and stated that he would “stipulate” that she was a tenant at the premises in question. The plaintiff objected, stating that he was “not making her a tenant” but that he did not want the Board “coming back stating that her name should have appeared somewhere on the application.” The Hearing Examiner then stated that his allowance of testimony from Ellen Waxman “does not mean that she is a tenant or that she'is hot a tenant”, adding that “an eviction is an eviction of the entire apartment.” The plaintiff, therefore, decided not to amend his application to'inclüde Ellen Waxman.
The hearing proceeded with the introduction of evidence by the plaintiff tending to show that he was the owner of 14 Foster Street, Brookline. That on August' 2, 1985, he had entered into a written lease with Michelle Miller and another pursuant to the terms of which he leased apartment 1 to them for a *74 term of one year, at a monthly rental of $550.00. The lease contained an express provision limiting occupancy to the named lessees. After the initial term of the lease, it was renewed for an additional year at an increased monthly rental of $575.00, and the lease was further amended to name Michelle Miller as the sole tenant. She initialed the lease, indicating her agreement to each of the amendments. In October of 1986, she telephoned the plaintiff and stated that she was vacating the apartment and giving it back to him. She later gave written notice of the termination and furnished her forwarding address. At the end of November, she left the keys to the apartment in the plaintiffs mail box.
Ellen Waxman, at some point, had moved into the apartment with Michelle Miller, without the written consent of the plaintiff. After the departure of Michelle Miller, she called the plaintiff and told him that she did not want to move. The plaintiff told her that she would not be permitted to remain on the premises, that she had never been accepted as a tenant, inasmuch as he had never accepted rent from her, and that he would not create a new tenancy with her. Ellen Waxman, thereafter tendered the monthly rent, but he refused to accept her tender of rent monies. In conclusion, the plaintiff stated that he had not, and would not accept Ellen Waxman as a tenant, and that he wanted her out “immediately, if not sooner.” On cross examination, the plaintiff acknowledged that he was aware that Michelle Miller had someone living with her and that he really did not care since he dealt exclusively with Michelle Miller, and when she left, anyone living with her had to go also.
Michelle Miller testified that Ellen Waxman had moved in during July of 1986, and that she would not have executed the lease renewal in August of 1986, if she thought that the plaintiff would not accept Ellen Waxman as a tenant. She acknowledged, however, that the plaintiff “never gave written permission approving a subtenant.”
Ellen Waxman testified that she had, in fact, moved into the apartment in July of 1986. She also stated that she had gone to the plaintiffs office in August of 1986, and filled out an application. No interview was set up and when the lease renewal was executed the plaintiff had declined to include her name on the lease, for reasons not entirely clear. She stated that she paid half of the monthly rent to Michelle Miller, had her name on the mail box and requested that repairs be made to the apartment.
At the conclusion of the hearing, the Board thereafter made the following findings of fact:
1. Shlomo Pinkas is the trustee of S & S Realty, which owns 14 Foster Street.
2. Michelle Miller and Bambi Roth signed a standard form apartment lease August 2,1985, wherein Michelle Miller and Bambi Roth agreed to rent from S & S Realty, 14 Foster Street, apartment #1 from September 1,1985 to August 31,1986.
3. The lease referred to in finding of fact #2 was subsequently amended to delete Bambi Roth’s name, and was renewed by changing the rental period to September 1,1986 to August 31,1987.
4. In May, 1986, Bambi Roth moved out of 14 Foster Street, apartment #1 and in July, 1986, Ellen Waxman moved into 14 Foster Street, apartment #1.
5. Ellen Waxman’s name was put on the mailbox when she moved into 14 Foster Street, apartment #1, in July 1986.
6. Before Ellen Waxman filled out the application to have her name added to the lease, Shlomo Pinkas, knew that someone was living at 14 Foster Street,, apartment #1, other than Michelle Miller, but he did not know who.
*75 7. In August 1986, Shlomo Pinkas met with Ellen Waxman, allowed her to fill out an application to have her name added to the lease, and subsequently interviewed her.
8. Shlomo Pinkas told Ellen Waxman and Michelle Miller that putting Ellen Waxman’s name on the lease would be too much paper work.
9. Ellen Waxman paid to Michelle Miller the equivalent of one month’s rent, which represented half of the first month’s rent and half of the last month’s rent.
10. In addition to the money she paid to Michelle Miller referred to in finding of fact #9, Ellen Waxman also paid to Michelle Miller half of the rent each month from July through November.
11. Michelle Miller cashed Ellen Waxman’s checks and then paid to Shlomo Pinkas the entire monthly rent.
12. Shlomo Pinkas gave Michelle Miller permission tó sublet to whomever she wanted for as long as she wanted and for as long as it was convenient to her. ¡
13. Ellen Waxman telephoned the management office once to request some lighting repairs and spoke to Shlomo Pinkas and he performed the repairs she requested.
14. Ellen Waxman is a subtenant who has been approved by the landlord.
15. Shlomo Pinkas gave Michelle Miller permission to terminate the lease as of November 30,1986.
16. Michelle Miller vacated 14 Foster Street, apartment #1 and returned her set of keys to Shlomo Pinkas on November 30, 1986.
17. Michelle Miller and Shlomo Pinkas agreed that Shlomo Pinkas would apply the last month’s rent, which he had been holding, to the month of November, 1986.
18. Ellen Waxman is a subtenant holding at the end of a lease term but who has been approved by the landlord.
19. On December 11,1986, Shlomo Pinkas received by certified mail a check for one month’s rent from Ellen Waxman, which Shlomo Pinkas did not cash and which |ie returned to Ellen Waxman.
20. Ellen Waxman did not fail to pay the rent for 14 Foster Street, apartment #1; rather, Shlomo Pinkas refused to accept her payment.
It is uncontroverted that paragraph 2 of the lease agreement between the plaintiff and Michelle Miller expressly providecftlhat “ [0 ] ccupancy is limited to the above-named Lessees”. Paragraph twenty-eight thereof further provided that “ [T ]he Lessees shall not assign or underlet any part of or the whole of the leased premises... without first obtaining... the assent in writing of the lessor”. In this connection, the evidence showed, and the Board found, that the plaintiff had declined to add Ellen Waxman’s name to the lease in August of 1986. At noltime did he subsequently give his written assent to her becoming a tenant or accept rent monies from her. Therefore, no tenancy was ever created between the plaintiff and Ellen Waxman. This case would appear to be controlled, in large part, by Health Co., Inc. v. E & S Health Associates, 400 Mass. 700, at 703, wherein the Supreme Judicial Court sustained the validity of a similar lease provision, noting that “[W]e must respect the integrity of contracts into which parties voluntarily and knowingly enter.” (See also Post v. Brookline Rent Control Board, 1984 Mass. App. Div. 250.) Michelle Miller and the plaintiff agreed to terminate the lease prior to its term, pursuant to which agreement she surrendered the keys to the premises and the plaintiff applied the last month’s rent to the rent then due for November, thereby terminating *76 the lease agreement. Accordingly, any rights that Ellen Waxman had also terminated, in the absence of written permission from the plaintiff for her to remain on the premises or acceptance by him of the appropriate rent. Parenthetically, it should be noted that we are unaware of any Massachusetts case law that holds such an express lease provision to have been waived in the absence of the landlord having accepted rent money.
Consequently, we conclude that the Board’s findings relative to Ellen Wax-man being an approved subtenant are not supported by substantial evidence. Hence, its decision must be vacated and annulled. It is, therefore, ordered that the Board forthwith issue the Certificate of Eviction, as applied for, subject, of course, to any further appellate review.